[No. 15498.   Department Two.—December 22, 1894.]

GEORGE G. WHITNEY ET AL., MINORS, ETC., APPEL-
LANTS, v. JOSEPHINE H. DODGE, RESPONDENT.

TRUST UNDER WILL—SUSPENSION OF POWER OF ALIENATION—LAW OF TES-
TATOR'S DOMICILE.—A trust created under the will of a testator who
was domiciled in the state of Pennsylvania at the time of his death, and
which was there probated, by the terms of which personal property was
devised in trust for the support and education of a grand-daughter of the
testator until she should be twenty-one years old, and afterwards dur-
ing the period of her natural life, and, in case she should die leaving
lawful issue, then her children should receive the interest and dividends
until the youngest thereof should be twenty-one years old, at which
time the *corpus* of the fund should be equally divided between such
children, is valid under the law of Pennsylvania, by which the testator
was permitted to suspend the power of alienation for the period of lives
in being and twenty-one years afterwards, and the trust created thereby
may be enforced in this state against the trustee in favor of the chil-
dren of the deceased, although under the law of California the provi-
sions of the will would be void if it were made in this state.

ID.—DISPOSITION OF PERSONAL PROPERTY—LEX DOMICILII—JUS GENTIUM.
From considerations of justice and the principle of comity the dis-
position of personal property is governed by the law of the domicile of
the owner, and this rule has so general a sanction among all civilized
nations that it may be treated as part of the *jus gentium,* and is part of
the general law of every state in which it has not been abrogated by
statute, either expressly or by necessary implication.

ID.—PUBLIC POLICY OF STATE—EFFECT OF DIFFERENCE OF LAW AS TO POWER
OF ALIENATION—LEX DOMICILII NOT ABROGATED.—Although the law of
another state upon any subject which conflicts with the public policy of
this state will not be recognized in this state, yet where the only dif-
ference between the statute of this state and that of another state is
the suspension of the power of alienation in certain cases, in such other
state, for a somewhat longer period than is permitted in this state, such
difference is not sufficient to work by necessary implication the abroga-
tion of the well-recognized rule that the disposition of personal property
is governed by the law of the domicile of the owner.

ID.—STATUTORY CONSTRUCTION.—All statutes must be construed with refer-
ence to well-known principles and rules of law existing at the time of
enactment.

ID.—VIOLATION OF TRUST NOT SANCTIONED.—It would not be within the
scope of a just and enlightened public policy to allow a trustee, with
trust funds in his hands, received under a will perfectly valid in another
state, to avoid the trust, appropriate the funds to his own use, and de-
feat the beneficiaries, by the simple device of coming to this state and
bringing the funds with him, and pleading that the trust is not valid
under the laws of this state.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*T. M. Osmont,* for Appellants.

The trust is valid under the laws of California. The postponement of the enjoyment of the *corpus* of the estate until the children of the grand-daughter should reach their majority only postponed their enjoyment of the gift, but their interest became vested therein as soon as they were born. (*Goldtree* v. *Thompson,* 79 Cal. 624, 613; *Cooper* v. *Hepburn,* 15 Gratt. 551; *King* v. *King,* 1 Watts & S. 205; 37 Am. Dec. 459; *Rogers* v. *Rogers,* 11 R. I. 38, 73; *Eldridge* v. *Eldridge,* 9 Cush. 516, *Radley* v. *Kuhn,* 97 N. Y. 26, 35; *Purdy* v. *Hayt,* 92 N. Y. 447; *Vanderpoel* v. *Loew,* 112 N. Y. 167, 181; *Goebel* v. *Wolf,* 113 N. Y. 405, 412, 413; 10 Am. St. Rep. 464; *Warner* v. *Durant,* 76 N. Y. 133; *Rives* v. *Frizzle,* 8 Ired. Eq. 239; *Ellwood* v. *Plummer,* 78 N. C. 392; *Collier's Will,* 40 Mo. 288; *Rivers* v. *Fripp,* 4 Rich. Eq. 276; *Danforth* v. *Talbot,* 7 B. Mon. 623; *Kinsey* v. *Lardner,* 15 Serg. & R. 192; *Dale* v. *White,* 33 Conn. 294; *Weyman* v. *Ringold,* 1 Bradf. 40; *Fitch* v. *Miller,* 20 Cal. 353; *Furness* v. *Fox,* 1 Cush. 134; 48 Am. Dec. 593; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178, 187; *Roome* v. *Phillips,* 24 N. Y. 463.) The will does not conflict with the statute, and is entirely valid. (*Burrill* v. *Sheil,* 2 Barb. 458; *Morton* v. *Morton,* 8 Barb. 18.) The trust is nothing more than a power, and does not prevent vesting. (*Bruner* v. *Meigs,* 64 N. Y. 506, 516; *Chapman* v. *Nichols,* 61 How. Pr. 275.) Where payment is postponed, the bequest of the income in the mean time to the legatee, as in the case at bar, is universally regarded as an earmark of a present vested legacy. (*Hanson* v. *Graham,* 6 Ves. 239; *Lane* v. *Goudge,* 9 Ves. 225; *Pearson* v. *Dolman,* L. R. 3 Eq. 315, 320; *Fuller* v. *Winthrop,* 3 Allen, 51, 60; *Toms* v. *Williams,* 41 Mich. 552, 565; *Rogers* v. *Rogers,* 11 R. I. 38; *Dale* v. *White,* 33 Conn. 294; *Bushnell* v. *Carpenter,* 92

N. Y. 270.) The bequest of the fund having vested absolutely in the plaintiffs upon the death of their mother the postponement of payment by the trustee does not affect their title. (*Everitt* v. *Everitt,* 29 N. Y 81; *Paterson* v. *Ellis,* 11 Wend. 268; *Tucker* v. *Bishop,* 16 N. Y. 402, 404.) The estate being a vested estate, there was no illegal suspension of ownership or power of alienation within the statute against perpetuities. (Gray on Perpetuities, 415; *Lawrence's Estate,* 136 Pa. St. 354; 20 Am. St. Rep. 925; *Tucker* v. *Bishop,* 16 N. Y. 405, 406; *Gilman* v. *Reddington,* 24 N. Y. 18, 19; *Smith* v. *Edwards,* 88 N. Y. 92, 109, 110; Chaplin on Suspension of Power of Alienation, 117, 128; *Beardsley* v. *Hotchkiss,* 96 N. Y. 202, 215; *Morton* v. *Morton,* 8 Barb. 18; Redfield on Wills, 572, 573; *Everitt* v. *Everitt,* 29 N. Y. 39, 96.) But even if the trust is not valid under our laws, it is valid in Pennsylvania, the place of domicile of the testator, and, under the prevailing rule of comity, must be held valid here. (Civ. Code, sec. 946; *Cross* v. *United States T. Co.,* 131 N. Y. 341; 27 Am. St. Rep. 597: *Greenwood* v. *Curtis,* 6 Mass. 358; 4 Am. Dec. 145; *McIntyre* v. *Parks,* 3 Met. 207; 1 Redfield on Wills, 394; Story on Conflict of Laws, 380; *Estate of Apple,* 66 Cal. 432.) Defendant, having accepted the trust and received the trust fund, is estopped to deny the trust, or her liability to account. (*Hill* v. *Den,* 54 Cal. 6; *Perryman* v. *Greenville,* 51 Ala. 507.)

*Joseph Leggett,* for Respondent.

The trust sought to be enforced in this action is void under our law, because its effect is to suspend the absolute power of alienation of the trust fund beyond the period permitted by the Civil Code. (Civ. Code, secs. 715, 716, 771; Chaplin on Suspension of Power of Alienation, secs. 142, 145; *Smith* v. *Edwards,* 88 N. Y. 92; *Ward* v. *Ward,* 105 N. Y. 68, 74, 75; *Haynes* v. *Sherman,* 117 N. Y. 433, 438, 439; *Hawley* v. *James,* 16 Wend. 61, 122.) Where the only gift is found in a direction to divide at a future time, the gift is future, and not immediate; con-

tingent, and not vested. (*Leake* v. *Robinson*, 2 Meriv. 363; *Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 N. Y. 92; *Goebel* v. *Wolf*, 113 N. Y. 405; 10 Am. St. Rep. 464; *Greenland* v. *Waddell*, 116 N. Y. 234; 15 Am. St. Rep. 400.)   The exercise of comity is a voluntary act of the sovereignty by which it is extended, and no court will apply it where its application is contrary to the established public policy of its own state, or is expressly prohibited by the laws thereof.   Mere comity can never compel courts to give effect to laws of another state which directly conflict with the laws of their own state and are contrary to its known public policy.   (Wharton on Conflict of Laws, 2d ed., sec. 598; Story on Conflict of Laws, secs. 38, 472; *Bank of Augusta* v. *Earle*, 13 Pet. 579, 589; *Green* v. *Van Buskirk*, 7 Wall. 139; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Mahorner* v. *Hooe*, 9 Smedes & M. 247; 48 Am. Dec. 706; *Harper* v. *Stanbrough*, 2 La. Ann. 377; *Harper* v. *Lee*, 2 La. Ann. 382; *Breadalbane* v. *Chandos*, 4 Clarke & F. 43; *Warner* v. *Jaffray*, 96 N. Y. 248; 48 Am. Rep. 616; *Pierce* v. *O'Brien*, 129 Mass. 314; 37 Am. Rep. 360; *Paine* v. *Lester*, 44 Conn. 196; 26 Am. Rep. 442; *Woodward* v. *Brooks*, 128 Ill. 222; 15 Am. St. Rep. 104; *Matter of Dalpay*, 41 Minn. 532; 16 Am. St. Rep. 729; *Smith* v. *McAtee*, 27 Md. 420; 92 Am. Dec. 641; *Ex parte Dickinson*, 29 S. C. 453; 13 Am. St. Rep. 749; Rorer on Interstate Law, 5; Sutherland on Statutory Construction, sec. 12.)   Perpetuities are contrary to the public policy of this state and are prohibited.   (Civ. Code, secs. 715, 716, 771; 1 Perry on Trusts, sec. 377; *Williams* v. *Williams*, 73 Cal. 99; *Mahorner* v. *Hooe*, 9 Smedes & M. 247; 48 Am. Dec. 706; *Estate of Hinckley*, 58 Cal. 474.)   The trust being void, the law of estoppel cannot be invoked by the devisees under the invalid will.

McFARLAND, J.—This action is for an accounting by defendant as a trustee of an alleged trust fund, and her removal as such trustee.   A general demurrer to the amended complaint was sustained, and judgment was

rendered for defendant. From the judgment plaintiff appeals; and the question is whether or not the complaint states facts sufficient to constitute a cause of action.

From the complaint it appears that one Jones Dyer, who was a resident of and domiciled in the state of Pennsylvania, died in the city of Philadelphia in said state on the fifteenth day of July, 1860, leaving a last will and testament. By said will he gave to the respondent herein, who was his daughter (to take effect after the death of his wife, Lydia Dyer), twelve thousand dollars in state bonds of the state of Maine in trust for certain uses and purposes. The trust was that respondent should devote the interest and dividends of the bonds to the support and education of one Alice S. Knight, a grand-daughter of the testator, until she should be twenty-one years old; and afterwards said Alice was to receive said interest and dividends during the period of her natural life. In case said Alice should die leaving lawful issue, then her children should receive said interest and dividends until the youngest thereof should be twenty-one years old, when the *corpus* of the fund should be equally divided between such children. The said will was duly probated in Pennsylvania. In 1866 the said Lydia Dyer, surviving wife of the deceased, died; and in August, 1867, the respondent received and accepted said bonds in trust as aforesaid. The said Alice S. Knight was married twice during her lifetime, and died in February, 1876, leaving the two appellants herein her sole and lawful issue. The latter were not born until after the death of the testator. The respondent having accepted said fund in trust as aforesaid and received all the said interest and dividends, has appropriated and converted said trust fund to her own use, and now denies and repudiates said trust, and refuses to account to appellants for any part thereof. Under the laws of Pennsylvania the said provisions of said will were valid, those laws permitting the suspension of the power of alienation for the period of lives in

being and twenty-one years afterward.   The foregoing
are the only material averments of the complaint neces-
sary to be here stated; and for the purposes of the de-
murrer they must, of course, be taken as true.

Respondent contends that the complaint does not
state a cause of action because the provisions of said
will upon which appellants rely were void under the
laws of California; and that therefore they cannot be
here enforced.

1. Counsel for appellants has argued with great learn-
ing, ability, and ingenuity that the said provisions of
said will would be valid under the laws of California if
the testator had been domiciled and the will had been
made here, and if no consideration of the law of comity
or the law of domicile were involved in the case.   It is
sufficient to say on this point that the learned counsel
has not convinced us that his position is tenable, or
that the said provisions of the will as to the children of
Alice Knight born after the death of the testator are not
within the limitations of section 715 of our Civil Code,
which provides that " the absolute power of alienation
cannot be suspended by any limitation or condition
whatever for a longer period than during the contin-
uance of the lives of persons in being at the creation of
the limitation or condition."   (Of course, in case of a
will, the " creation of the limitation or condition" takes
place at the death of the testator.)   We will assume,
therefore, that if the will had been made in this state
by a person domiciled here it could not have been here
enforced.

2. But it does not follow that respondent can escape
the obligations of a trust touching personal property
created in another state and perfectly valid there, by
removing into this state, where such a trust if created
here would not have been valid.

It is the clearly established general rule, arising out
of considerations of justice and the principle of comity,
that the disposition of *personal property* is governed by
the law of the domicile of the owner.   The rule is well

stated and many authorities to the point cited in the opinion of Mr. Justice Ross in *Estate of Apple*, 66 Cal. 432.   Story in his Conflict of Laws (p. 538), after having given various accounts of the origin of the rule, says: "But be the origin of the doctrine what it may, it has so general a sanction among all civilized nations that it may now be treated as a part of *jus gentium.* Lord Loughborough has stated it with great clearness and force in one of his most elaborate opinions: 'It is a clear proposition,' said he, 'not only of the law of England, but of every country in the world where law has the semblance of science, that personal property has no locality.'   The meaning of that is, not that personal property has no visible locality, but that it is subject to the law which governs the person of the owner. With respect to the disposition of it, with respect to the transmission of it, either by succession or by the act of the party, it follows the law of the person.   The owner in any country may dispose of his personal property. If he does, it is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession."   Of course, the law of any one state or nation does not *ex proprio vigore* extend beyond its own territory; and any state would have the rightful power to provide that the rule above stated should *not* prevail within its jurisdiction.   But the rule is part of the general law of every state in which it has not been abrogated either by express legislative language or the enactment of statutes which work such abrogation by necessary implication. In the absence of such abrogation the rule is not to be considered as imposed by foreign power upon the state in which it is invoked, but as part of the law of such state.   Story says: "The same doctrine was recognized by Lord Chief Justice Abbott on another occasion. 'Personal property,' said he, 'has no locality, and even with respect to that it is not correct to say that the law of England *gives way* to the law of a foreign country, but that it is *part of the law of England* that personal

property should be distributed according to the *jus domicilii.'*   The same doctrine has been constantly maintained both in England and America, with un-broken confidence and general unanimity." (Story on Conflict of Laws, 539.) The rule is founded on the most substantial principles of justice and right. A man is presumed to know the law of his own state or country upon the subject of the disposition of personal prop-erty, but not the law of all states or countries; and, if he make such disposition thereof as is valid in his own state, it ought in fairness to be recognized in another state into which the property might be brought. Story says: "If the law *rei sitæ* were generally to prevail in regard to movables, it would be utterly impossible for the owner, in many cases, to know in what manner to dispose of them during his life, or to distribute them at his death, not only from the uncertainty of their situa-tion in the transit to and from different places, but from the impracticability of knowing with minute certainty the law of transfers *inter vivos*, or of testamentary dis-positions and successions, in the different countries in which they might happen to be. Any change of place at a future time might defeat the best considered will; and any sale or donation might be rendered inoperative from the ignorance of the parties of the law of the actual *situs* at the time of their acts. These would be serious evils, pervading the whole community and equally affecting the subjects and interests of all civil-ized nations." (Story on Conflict of Laws, 537.) The rule in question is fully recognized in section 946 of our Civil Code, which provides that: "If there is no law to the contrary in the place where personal property is sit-uated it is deemed to follow the person of the owner, and is governed by the law of his domicile."

It is true, as stated by counsel for respondent in his very able brief, that a law of another state, upon any subject which conflicts with the public policy of this state, will not be recognized here. And this principle is sought to be applied in the case at bar upon the

ground that the policy of this state is against perpetuities, and that the provisions of the will under review are in conflict with that policy. But the public policy of Pennsylvania, and of every American state so far as we have observed, is also against perpetuities. What is a perpetuity? It is a word "applied to attempts to invest money or restrict the alienation of land in such way as forever to retain it for the benefit or in the enjoyment of the persons of a particular line of descendants." (Abbott's Dictionary.) To prevent such a thing is within the settled policy of both Pennsylvania and California; and the only difference between the laws of the two states on the subject is that in the former the suspension of the power of alienation might, in certain cases, extend to a somewhat longer period than would be permitted in the latter. But this difference is not sufficient to work by necessary implication the abrogation of the well-recognized rule as to personal property above stated. All statutes must be construed with reference to well-known general principles and rules of law existing at the times of their enactment. The recent case of *Cross* v. *United States Trust Co.*, 131 N. Y. 330, 27 Am. St. Rep. 597, is very similar to the one at bar. There a trust in personal property was created by a will made by a resident of Rhode Island, which was valid there, but which would have been invalid, under the statutes of New York concerning perpetuities, if made in the latter state. The whole question is elaborately discussed, and the conclusion reached that the *lex loci domicilii* governed the case, and was not overcome by any consideration of conflict with the public policy of New York touching the matter of perpetuities. The court, among other things, said: "The only material difference in the law of the two states on this subject is that in each a different rule is adopted for measuring the period within which absolute ownership may lawfully be suspended. Granting that in most cases this period might be longer in Rhode Island than in New York, have we any right for that reason to declare the

dispositions of this will void? If so, then a person desiring to make a will must not only know the law of his domicile, but also the law of every other country in which his personal estate may happen to be at his death, and our courts will become the resort of dissatisfied heirs or legatees seeking to nullify wills valid by the laws of the place where the persons who made them were domiciled." We might add to this category persons who should go with trust funds to another state for the purpose of avoiding the will and the trust.

Respondent contends that the provisions of the will in question contravene the express provisions of certain cited sections of our code. We do not construe those sections as either expressly or impliedly abrogating the above-stated rule as to personal property. They must be construed in connection with section 946 above quoted and the general law upon the subject.

It may be said, generally, that it would not be within the scope of a just and enlightened public policy to allow a trustee with trust funds in his hands, received under a will perfectly valid in another state, to avoid the trust, appropriate the funds to his own use, and defeat the beneficiaries, by the simple devise of coming to this state and bringing the funds with him. We do not know that these are the facts in the case at bar; but they are alleged in the complaint, and we are here dealing with the averments of the complaint alone. Our conclusion is that the demurrer should have been overruled.

The judgment appealed from is reversed, and the cause remanded, with direction to the court below to overrule the demurrer to the complaint.

DE HAVEN, J., and FITZGERALD, J., concurred.