[S. F. No. 6299.   Department Two.—April 4, 1913.]

## In the Matter of the Estate of ARIEL LATHROP, Deceased, AIMEE LATHROP HANSON, Appellant.

WILL OF NONRESIDENT TESTATOR—CHARITABLE BEQUESTS IN EXCESS OF
ONE-THIRD OF ESTATE — PERSONAL PROPERTY SITUATED IN CALI-
FORNIA.—Under section 1285, as amended in 1905, and 1313 of the
Civil Code, provisions in a will of a nonresident testator, collectively
disposing of more than one-third of his estate to charity, although
valid according to the law of his domicile, operate  to pass title to
only one-third of his personal property situated in this state.

ID.—PERSONAL PROPERTY PASSES ACCORDING TO LAW OF DOMICILE—
LIMITATIONS ON GENERAL RULE.—As a general rule, arising out of
considerations of justice and the principle of comity, the distribution
of personal property is governed by the law of the domicile of
the owner.   This rule is subject to the limitation, embodied in
section 946 of the Civil Code, that the law of the domicile controls
"if there is no law to the contrary, in the place where the per-
sonal property is situated."   Such limitation is operative not only
when the disposition made of the property does violence to the
statute law of the country where it is situated, but also where it
is conceived to be contrary to the welfare of that country or to
its public policy.

ID.—LAW GOVERNING CHARITABLE BEQUESTS IN FOREIGN WILLS.—Since
the amendment of 1905 to section 1285 of the Civil Code, subjecting
foreign wills, so far as they relate to personal property, to the
provisions of section 1313 of that code, charitable bequests in for-
eign wills are governed by the same rules controlling like bequests
in domestic wills.   The application of that section is not limited
to cases of a will of a nonresident decedent which has not been
probated in the domicile of the decedent.

ID.—DISTRIBUTION TO DOMICILIARY EXECUTOR NOT OBLIGATORY.—Section
1667 of the Code of Civil Procedure, does not compel the court
of the ancillary administration in this state to distribute personal

property situated in this state to the domiciliary executors. It confers a mere discretion so to do, which must be exercised in consonance with the dictates of public policy and of the statutes of this state; and where such a distribution would do violence to plain provisions of our laws, it should not be made, and cannot be upheld if made.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, Page, McCutchen, Knight & Olney, Samuel Knight, and Bradner W. Lee, for Appellant.

Wilson & Wilson, for Respondents.

HENSHAW, J.—Ariel Lathrop died in 1908 in the county of Rensselaer, state of New York, of which county and state he was a resident at the time of his death. With other heirs at law he left Aimee Lathrop Hanson, appellant herein, the daughter of a deceased brother. His last will and testament was probated in the state of New York. This will admittedly made a valid disposition of the property belonging to his estate under the laws of the state of New York, and was executed in accordance with those laws, as well as in accordance with the laws of this state. Under the probate proceedings in New York State, the respondents, Russell M. Johnston and Donald McCredie, were appointed executors. Under his will all the property of his estate, with the exception of twenty-eight thousand five hundred dollars, was devised and bequeathed to charity. The value of his estate was between two hundred and two hundred and fifty thousand dollars. Under the laws of the state of New York this disposition was valid. After the original probate of the will, proceedings were duly taken to have the will admitted to probate in this state, pursuant to section 1322 et seq. of the Code of Civil Procedure. Application for letters testamentary was made, and in March, 1909, such letters were issued to the domiciliary executors who came to this state and submitted themselves to the jurisdiction of its court. On March 1, 1910, the executors petitioned for final distribution of the estate situated in this

state to themselves as such domiciliary executors. Appellant filed written objections, setting forth that she is one of the heirs at law of the deceased; that under the deceased's will the devises and bequests to charity collectively exceed one-third of the estate, contrary to the law of this state. She prayed that to her be distributed her proportionate part of two-thirds of the estate situated in this state, to wit, one-sixth. The property situated in California and affected by the decree of distribution is wholly personal property, consisting of cash and certain shares of the capital stock of the Bank of Tehama County, its value altogether amounting to the sum of $13,536. The court in probate overruled appellant's objections and distributed the whole estate to the domiciliary executors. Appellant contends that by force and virtue of the express laws of this state, which laws must control in the construction of the testator's bequests and in the distribution of his property under his will, the will itself does violence to the rule governing charitable devises or bequests, with the necessary result that as to two-thirds of the estate of the deceased situated in this state, the testator died intestate, and that this two-thirds therefore descends and must be distributed to his heirs at law.

Bearing upon this consideration are the following provisions of our codes:

"The validity and interpretation of wills, wherever made, are governed, when relating to property within this state, by the law of this state, except as provided in section twelve hundred and eighty-five." (Civ. Code, sec. 1376.)

"If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile." (Civ. Code, sec. 946.)

"No will made out of this state is valid as a will in this state, unless executed according to the provisions of this chapter, except that a will made in a state or country in which the testator is domiciled at the time of his death, and valid as a will under the laws of such state or country, is valid in this state so far as the same relates to personal property, subject, however, to the provisions of section thirteen hundred and thirteen." (Civ. Code, sec. 1285.)

"No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made, at least thirty days prior to such death such devise or legacy and each of them shall be valid; provided that no such devises or bequests shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a *pro rata* deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law." (Civ. Code, sec. 1313.)

"Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a nonresident of this state, leaving a will which has been duly proved or allowed in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court may order such delivery to be made, and, if necessary, order a sale of the real estate, and a like delivery of the proceeds. The delivery, in accordance with the order of the court, is a full discharge of the executor or administrator with the will annexed, in this state, the relation to all property embraced in such order, which, unless reversed on appeal, binds and concludes all parties in interest. Sales of real estate, ordered by virtue of this section, must be made in the same manner as other sales of real estate of decedents by order of the court." (Code Civ. Proc., sec. 1667.)

Having relation to these provisions of the law, are section 1323 of the Code of Civil Procedure which, dealing with foreign wills, makes provision for the giving of a notice of the hearing of the probate of such a will precisely as in the case of a domestic will, and section 1304, which specifies that to the heirs and named executors is to be mailed a copy of the notice of the time appointed for the probate.

The above quotations make manifest the cause of the controversy between the parties. Appellant contends that the very reading of section 1285, in connection with section 1313 of the Civil Code, discloses the limitation which the legislature has put upon the power to dispose of personal property, situated within the jurisdiction of the state. Respondents contend that such a construction does such violence to the *jus gentium,* is so subversive of the universal rule which obtains in all civilized nations in regard to an owner or testator's rights over his personal property, that even if the power of the legislature to do this thing be conceded, the court should adopt any possible construction to acquit it of so flagrant an act. (*Cullerton* v. *Mead,* 22 Cal. 96; *Estate of Garcelon,* 104 Cal. 584, [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414].)

The law governing the disposition and control of personal property,—the law whose application to this decree respondents ask to be considered controlling, is itself unquestioned. That law is a part of the *jus gentium* and announces the clearly established general rule arising out of considerations of justice and the principle of comity that the distribution of personal property is governed by the law of the domicile of the owner. It is recognized by our own decisions as in *Estate of Apple,* 66 Cal. 434, [6 Pac. 7], and *Whitney* v. *Dodge,* 105 Cal. 197, [38 Pac. 636]. It is also declared by section 946 of our Civil Code above quoted. But the declaration is accompanied by the all important limitation that the law of the domicile controls ''if there is no law to the contrary in the place where the personal property is situated.'' This limitation not only finds expression in the code but equally in the leading cases above cited. Thus, in *Estate of Apple,* it is declared that *''in the absence of positive law to the contrary,* disposition of the decedent's personal estate will be governed by the law of his actual domicile.'' In *Whitney* v. *Dodge* it is said: ''But the rule is part of the general law of every state *in which it has not been abrogated either by express legislative language or the enactments of statutes which work such abrogation by necessary implication.''* It is not only when the disposition made of the property does violence to the statute law of the country where it is situated that a limitation upon the otherwise universal rule

is worked. It is equally true where the disposition made is conceived to be contrary to the welfare of that country or to its public policy, a proposition well illustrated in *Mahorner* v. *Hooe et al.*, 9 Smedes & M. (Miss.) 247, [48 Am. Dec. 706]. The true rule is thus succinctly stated by Story (Conflict of Laws, sec. 38) : "In the silence of any positive rule affirming, or denying, or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interests." And the same principle, with more elaboration, is declared by Cyc. as follows: "There is no doubt that every state has power to establish and regulate the rights of property in things within its jurisdiction, whether the property be real or personal, movable or immovable. Accordingly the law of the place under which an ancillary administration is taken must govern the distribution of the assets in the payment of debts there. Some states have exercised this power for the purpose of regulating the descent and distribution of personal property within their limits, as well as of real estate, notwithstanding the laws of the domicile of the owner." (22 Cyc., p. 22.)

The amendment to section 1285 above quoted was adopted in 1905, subsequent, of course, to the decisions in *Estate of Apple* and *Whitney* v. *Dodge*. Up to that date the state had refrained from interfering in the case of a foreign will with the distribution of the personal estate here situated in so far as the charitable devises and bequests in such will were concerned. The legislature in 1905 with deliberation added the proviso to section 1285 limiting the validity of such charitable devises and bequests in foreign wills by the provisions of section 1313. This legislative declaration is without ambiguity and is perfectly understandable. To deny it its manifest meaning is to strike it from the statute. That meaning is, and can be nothing other than that charitable bequests in foreign wills shall be governed by the same rules controlling like bequests in domestic wills. In the one case in which this court has been called upon to consider the law as amended such was the construction given to it. (*Estate of Dwyer*, 159 Cal. 680, [115 Pac. 242].) There is nothing in the language of section 1285 to justify the argument that its application must be limited to cases of a will of a nonresident decedent

which has not been probated in the court of domicile of the decedent. The very language of section 1285 forbids it. "No will," declares that section, "is valid" excepting as therein provided.

Nor yet can we agree with the respondents' further contention that section 1667 of the Code of Civil Procedure is all-controlling and that under its provisions the distribution here made is warranted. The language of this section that where "it is necessary in order that the estate or any part thereof may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state, or place of his residence, the court *may* order such a delivery to be made," is not a mandate upon the court but vests in it merely a discretion so to do. (*In re Hughes,* 95 N. Y. 55.) That discretion will be exercised in consonance with the dictates of public policy and of our own statutes and where it shall be found, as here, that to distribute the estate or deliver the estate to the domiciliary executors would do violence to plain provisions of our laws, such a distribution should not be made, and cannot be upheld if made.

The decree appealed from is therefore reversed with directions to the trial court to enter its decree in accordance with the opinion and judgment herein rendered.

Melvin, J., and Lorigan, J., concurred.