(June 15, 1916.)

## MARY E. VANSICKLE, Appellant, v. CORA HAZELTINE et al., Respondents.

[158 Pac. 326.]

NONRESIDENT DECEDENT—COMMUNITY PERSONAL PROPERTY—DISTRIBUTION OF—STATUTORY CONSTRUCTION.

1. The succession of community property is provided for by sec. 5713, Rev. Codes, as amended by Sess. Laws 1911, p. 29. That section must be construed with other sections of the statutes in regard to descent and distribution of the property of a deceased person.

2. Sec. 5628, Rev. Codes, provides for the settlement of ancillary administration.

3. Sec. 3095, Rev. Codes, provides that if there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile; and the general rule is that the succession to and distribution of personal property wherever situated is governed by the *lex domicilii* of the owner or intestate at the time of his death, without regard to the location of the property or

the place of his death. However, so far as creditors are concerned, each state will deal with the property of a decedent within its jurisdiction according to its own laws.

4. *Held*, that the distribution of the Gutches estate in accordance with the laws of the state of Washington does not conflict with any statute in this state, and does not contravene the public policy of the state.

[As to right of alien or nonresident to act as executor or administrator, see note in Ann. Cas. 1912A, 747.]

APPEAL from the District Court of the Second Judicial District for Latah County. Hon. Edgar C. Steele, Judge.

An action to determine the descent and distribution of community personal property of a nonresident decedent. Judgment for the nonresident claimant. *Affirmed.*

Orland & Lee, for Appellant.

Sec. 5713, as amended by the act of 1911, was evidently intended to and undoubtedly does fix the *status* of community property, both real and personal, in its succession, without regard to the residence of the owners, and the evident intent and policy of the laws of Idaho is to control the succession of community property, and the rule of the common law has no application in Idaho governing the devolution of community property, be the same real or personal.

Courts will not enforce the laws of a sister state or of a foreign country when such laws are in contravention of the laws of the state wherein it is sought to be enforced, or contrary to its institutions and policy as shown by legislative will. (*Smith v. McAtee*, 27 Md. 420, 92 Am. Dec. 641; *Palmer v. Palmer*, 26 Utah, 31, 99 Am. St. 820, 72 Pac. 3, 61 L. R. A. 641; *Conklin v. United States Shipbuilding Co.*, 123 Fed. 913.)

"The court may refuse to recognize the rule that the law of the decedent's domicile controls devolution of his personal or movable property, where its enforcement would be repugnant to the laws of inheritance prevailing in the forum or contrary to the policy there obtaining." (22 Am. & Eng. Ency. of Law, 2d ed., 1358.)

Our code determines the succession of all the property acquired by the marital community within this state, and situated therein at the time of the dissolution; it makes no distinction between the property acquired and owned within the state by a resident marital community and the property acquired and owned by a nonresident marital community. Statutes of this kind are real statutes, and regulate property within the state and provide for the succession thereto upon the dissolution of the marital community by death. (*Saul v. His Creditors,* 5 Mart. (N. S.) (La.) 569, 16 Am. Dec. 212; *Cole's Widow v. His Executors,* 7 Mart. (N. S.) (La.) 41, 18 Am. Dec. 241.)

A. L. Morgan, for Respondents.

"The succession to and the disposition and distribution of personal property, wherever situated, is governed by the *lex domicilii* of the owner or intestate at the time of his death without regard to the location of the property or the place of the death." (14 Cyc. 21-C; *Apple's Estate,* 66 Cal. 432, 6 Pac. 7; *Goodrich v. Treat,* 3 Colo. 408; sec. 3095, Rev. Codes.)

The above rule is absolute in the absence of a positive statute of the state where the property is located expressly regulating the succession of personal property within the state without regard to the domicile of the owner. (*Apple's Estate, supra; In re Lathrop's Estate,* 165 Cal. 243, 131 Pac. 752; *State v. Dunlap,* 28 Ida. 784, 156 Pac. 1141.)

Personal property acquired during coverture is governed and controlled by the law of the domicile. (*Douglas v. Douglas,* 22 Ida. 336, 125 Pac. 796.)

It is not correct to say that our law, on account of comity, gives way to the law of another state. It is a part of the law of Idaho that personal property should be distributed according to *lex domicilii.* (*Whitney v. Dodge,* 105 Cal. 192, 38 Pac. 636.)

SULLIVAN, C. J.—This is an appeal from a decree or judgment of the district court affirming an order or decree

of the probate court of Latah county made in the distribution of a part of the estate of Lincoln Gutches, deceased.

The following facts appear from the record: Lincoln Gutches, deceased, was a resident of the state of Washington at the time of his death, which occurred on May 10, 1914, and the appellant, Mary E. Vansickle, was the wife of the deceased at the time of his death. She thereafter married a man by the name of Vansickle. Gutches left an estate in Latah county, a portion of which was personal property, all of which had been acquired during the existence of the marital relations by the joint efforts of the spouses, and was therefore community property. There were six children, five of whom were minors at the time of the death of Gutches, and who were represented in the district court and probate court by guardians *ad litem*. The respondent Cora Hazeltine was the married daughter. Administration was taken out in Latah county and the administrator petitioned the probate court to distribute the entire estate, it being community property, to the widow, Mrs. Vansickle. Mrs. Hazeltine filed her petition in the probate court and prayed that one-half of the personal property in Latah county be distributed to the children of Gutches and one-half to the wife. A. L. Morgan, Esq., as guardian *ad litem* on behalf of the minor children, filed a similar petition in the probate court asking that one-half of said estate be distributed to the children. The probate court denied the petition of the appellant asking that all of the property be set aside to her and thereafter distributed the personal property of said deceased, one-half to the children of the deceased and one-half to the appellant.

An appeal was thereafter taken to the district court, and upon a hearing the order of the probate court distributing the estate was affirmed, and from the judgment entered this appeal is taken.

There is but one question in this case, which involves the law governing the devolution of community property upon the decease of one of the spouses, regardless of his or her residence; or, in other words, shall the community personal property of a deceased husband or wife, situated and being

within the state of Idaho, be distributed according to the laws
of Idaho or according to the laws of the domicile of the de-
ceased, in this case the domicile being the state of Wash-
ington?

The property here involved is admitted to be personal,
community property, and was situated within the state of
Idaho at the time of the death of Gutches.

It is contended by counsel for appellant that under the
provisions of sec. 5713, Rev. Codes, as amended by Sess. Laws
1911, p. 29, that the succession of community property situ-
ated in the state of Idaho is positively fixed, and that all
personal property of the deceased must be distributed to the
heirs of the deceased in accordance with the laws of· this
state.

It is claimed by counsel for respondent that such property
should be distributed according to the laws of the state of
Washington, for the reason that the deceased resided at the
time of his death in that state, and it is contended that the
common law relative to the distribution of personal property
of a deceased person prevails in this state, and that the
succession to the estate follows the laws of the domicile at
the time of the death. Counsel for respondent concedes the
common-law rule as above stated, but contends that it has no
application to said community property.

Said sec. 5713 as amended by Sess. Laws 1911, p. 29, is as
follows:

"Upon the death of either husband or wife, one-half of all
the community property shall go to the survivor, subject to
the community debts, and the other half shall be subject to
the testamentary disposition of the deceased husband or wife,
in favor only of his, her or their children or a parent of either
spouse, subject also to the community debts, provided that
not more than one-half of the decedent's half of the com-
munity property may be left by will to a parent or parents.
In case no such testamentary disposition shall have been made
by the deceased husband or wife of his ·or her half of the
community property, it shall go to the survivor, subject to
the community debts, the family allowance and the charges

and expenses of administration; *Provided, however,* That no administration of the estate of the wife shall be necessary if she dies intestate.''

This section must be construed with other sections of the statute in regard to descent and distribution of the property of a deceased person, and sec. 5628, Rev. Codes, provides for the settlement of ancillary administration. Said section is as follows:

''Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a nonresident of this state, leaving a will which has been duly proved or allowed in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary, in order that the estate or any part thereof may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court may order such delivery to be made, and if necessary, order a sale of the real estate, and a like delivery of the proceeds. The delivery, in accordance with the order of the court, is a full discharge of the executor or administrator with the will annexed, in this state, in relation to all property embraced in such order which, unless reversed on appeal, binds and concludes all parties in interest. Sales of real estate ordered by virtue of this section, must be made in the same manner as other sales of real estate of decedents by order of the probate court.''

It is provided by sec. 3095, Rev. Codes, as follows: ''If there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner and is governed by the law of his domicile.'' And the general rule is that the succession to, and disposition and distribution of, personal property, wherever situated, is governed by the *lex domicilii* of the owner or intestate at the time of his death, without regard to the location of the property or the place of his death. (See 14 Cyc., p. 21, and authorities there cited.)

But it is contended by counsel for appellant that said sec. 5713, as amended, changes that general rule and that said section establishes a rule contrary to the general law. We are not in accord with that contention.

Said sec. 5628 is identical with sec. 1667 of the Code of Civil Procedure of California, and in the case of *Estate of Apple,* 66 Cal. 432, 6 Pac. 7, in construing that section of the statute with other sections, the court held in effect that nowhere in either of the codes of California is it provided that personal property of a decedent situated there when his actual domicile at the time of his death was in another state should be distributed in accordance with the laws of California, and it was held that it was obvious that by the provisions of said section the legislature had clearly recognized ancillary administrations, and that a different holding would abolish ancillary administrations altogether and make administrations on an estate of a nonresident decedent entirely independent of his domicile. It is also there held that so far as creditors are concerned, each state will deal with the property of a decedent within its jurisdiction according to its own laws, and the court said: "Nor is it a matter of importance that there was no administration of the estate of the person of the decedent had in the state of his domicile, but that probate of the will, as well as administration of the estate, was had here, and only here." (As touching upon this question, see, also, *Whitney v. Dodge,* 105 Cal. 192, 38 Pac. 636.)

As we understand it, at the time of the decision of the Apple estate, the statutes of California were identical with ours; that is, they point out the parties to whom property should descend, whether it be separate property or community property, and it could make no difference with the contention of counsel for appellants whether the persons are the same or not in each statute so long as the statute designates some one to inherit the property.

Counsel for appellant cites in favor of his contention the case of *In re Lathrop's Estate,* 165 Cal. 243, 131 Pac. 752. In that case the decedent had attempted by will to leave to

charity a portion of his estate in direct conflict with sec. 1313 of the California Civil Code, and the court said:.

"The law governing the disposition and control of personal property, the law whose application to this decree respondent asks to be controlling, is itself unquestioned. That law is a part of the *jus gentium* and announces the clearly established general rule arising out of considerations of justice and the principle of comity that the distribution of personal property is governed by the law of the domicile of the owner. It is recognized by our own decisions, as in *Estate of Apple,* 66 Cal. 432, 434, 6 Pac. 7, and *Whitney v. Dodge,* 105 Cal. 192, 197, 38 Pac. 636. It is also declared by sec. 946 of our Civil Code, above quoted. . . . . The legislature in 1905, with deliberation, added the proviso to section 1285 limiting the validity of such charitable devises and bequests in foreign wills by the provisions of sec. 1313. This legislative declaration is without ambiguity and is perfectly understandable. To deny it its manifest meaning is to strike it from the statute. That meaning is and can be nothing other than that charitable bequests in foreign wills shall be governed by the same rules controlling like bequests in domestic wills."

Among other provisions, sec. 1313 provides that no such devises or bequests shall collectively exceed one-third of the estate of the testator. And it appears from the facts in that case that the decedent by his will left more than one-third of his estate in California to charity, and the court there held that the positive statute prohibiting such bequests must control.

As we view it, the distribution of the estate of Gutches, the decedent, in accordance with the laws of the state of Washington, does not conflict with any statute of this state and does not contravene the public policy of the state. That being true, the judgment of the district court must be affirmed, and it is so ordered, with costs in favor of the respondents.

Budge, J., concurs.

Morgan, J., did not sit at the hearing and took no part in the decision of this case.