[Civ. No. 16098. First Dist., Div. One. Aug. 15, 1955.]

Estate of JENNETTE NOLAN, Deceased. EMMETT LYONS, as Administrator With the Will Annexed, etc., Appellant, v. W. A. ROBISON, as Administrator With the Will Annexed, etc., et al., Respondents.

M. Mitchell Bourquin for Appellant.

Frank J. Fontes, Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondents.

BRAY, J.—The administrator of the domiciliary estate appeals on an agreed statement from that portion of the decree of settlement of the probate court wherein the sum of $17,947.02* and all after acquired property of the estate is distributed to the State of California as escheated property.

### QUESTION PRESENTED

California has not heretofore determined the situs of personal property located in this state belonging to a nonresident intestate who leaves no heirs. The parties point out that there is a conflict of authority on the subject in other jurisdictions. Thus in *In re Lyons' Estate,* 175 Wash. 115 [26 P.2d 615], the doctrine of *mobilia sequuntur personam* was applied and the situs was held to be at the domicile of the intestate. In *In re Rapoport's Estate,* 317 Mich. 291 [26 N.W.2d 777], and in *In re Menschefrend's Estate,* 283 App.Div. 463 [128 N.Y.S. 2d 738] (overruling *In re Menschefrend's Estate,* 124 N.Y.S. 2d 793) the situs of such personalty was held to be in the state where it actually is located. We have been asked to make a

---

\*$16,386.81 of this sum represents the proceeds of the bank accounts, less prorated costs of administration. This $16,386.81 is the only sum in dispute.

choice of one of these rules. We deem it unnecessary to do so, for the reason that if the situs of the property is in Montana it must be disposed of according to Montana laws. On the other hand, if the situs of the personalty is in this state, we believe that the Legislature has determined in section 946, Civil Code, that it must be dealt with according to the law of the domicile of the intestate. Thus the question to be determined here is the effect of that section.

### FACTS

Jennette Nolan, a resident of Butte, Montana, died May 3, 1948. She left no known heirs. Although she left a will, she died intestate as to all of her assets in California consisting of certain real property and two savings bank accounts. Her will was duly admitted to probate in Montana. Thereafter ancillary probate proceedings of her will were had in the San Francisco Superior Court. No creditors' claims were filed in the latter proceeding. January 15, 1953, the California administrator filed here his petition for distribution of the California estate. February 13th, the Montana administrator filed here his petition for delivery of the assets to him. April 16th the State of California filed here its petition for delivery of assets to the Treasurer of the State of California as escheated property.

No provision was made in the will for disposition of either the California savings account or the California real estate, and therefore said decedent died intestate as to said personal and real property. There are sufficient assets in the Montana estate to pay all creditors' claims and the costs of administering that estate. August 26th the San Francisco Superior Court ordered the balance of said savings accounts, after payment of costs of administration, and all California estate that might hereafter be discovered, to be distributed to the State of California as escheated property. That the real property escheated to the State of California and therefore that the distribution of it to the State of California, was proper, is conceded. The appeal is from the distribution to the State of California of the savings accounts only.

### EFFECT OF SECTION 946, CIVIL CODE

That section provides: "If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."

In *Estate of Barton*, 196 Cal. 508 [238 P. 681], the decedent

was found to be a resident of California, leaving certain personal property situated in Rhode Island. His will left the stock to one Blake, "his heirs and assigns forever." Blake predeceased the testator. Under California law the bequest would lapse, while under Rhode Island law Blake's heirs would be entitled to take. The court applied section 946, Civil Code, stating: "The obvious meaning of the statute is that personal property is governed by the law of the domicile of its owner *unless a general or specific law* where the property is situated provides that the law of the domicile shall not govern." (P. 513; emphasis added.) The court held that in Rhode Island (where the property was situated) there was no law to the effect that the law of the domicile of the testator concerning lapsed legacies should not apply to personal property situated within that state; hence, the property should be dealt with under California law (the domicile of the owner). Thus it is clear that under section 946 the bank accounts will be deemed to follow the person of their owner, and governed by the law of her domicile (Montana), unless there is law to the contrary, not in Montana, but here, where the property is located. In determining this question we must consider three Probate Code sections, two of which, sections 231 and 1027, are cited as law to the contrary, and one, section 1040, is cited as supporting the view that there is no law to the contrary.

■ .Considering section 1040 first, we find that it really has no application to the problem before us. It merely provides for distribution in a proper case to a domiciliary estate from an ancillary estate being probated here. It does not deal with situs, as does section 946. It states, in effect, that where there is domiciliary administration "and it is necessary in order that the estate, or any part thereof, may be distributed according to the will, or it is for the best interests of the estate, that the estate in this state or any part thereof should be delivered to the executor or administrator in the state of the decedent's residence, the court may order such delivery to be made, and, if necessary, direct a sale of the real property and a like delivery of the proceeds. Such sale must be made in the same manner as other sales of real property of decedents." The section deals with procedure only.

■ Section 231 provides, in part: "If the decedent leaves no one to take his estate or any portion thereof under the laws of this State, the same escheats to the State as of the date of the death of the decedent." Is this "law to the contrary" of

section 946, Civil Code? We think not. It is a general section on escheat, to the effect that if the decedent leaves no one to take any portion of his estate *under the laws of this state* it escheats to California. Moreover, "under the laws of this state" it is expressly provided in section 946 that personal property follows the person of its owner. ■ There is nothing in section 231, Probate Code, indicating an intention of the Legislature to abrogate the effect of section 946. ■ Particularly is this so when we remember that succession to personal property under the common law and the ascertainment of the person entitled thereto was governed by the domicile of the intestate at the time of death. As stated in *Estate of Barton, supra,* (1925) 196 Cal. 508, 512, and *Whitney* v. *Dodge* (1894), 105 Cal. 192, 199 [38 P. 636], this rule is embodied in section 946. In *Estate of Lund* (1945), 26 Cal.2d 472, 477 [159 P.2d 643, 162 A.L.R. 606], the court in deciding the question of legitimacy of a child and its right to succeed to its claimed father's estate, pointed out that in the case of movables the question of whether a child shall succeed to the estate of his father is determined by the law of the father's domicile, unless there is law to the contrary at the situs of the property. As pointed out above, the same rule was applied in *Estate of Barton, supra,* 196 Cal. 508, in determining whether a legacy of personal property had lapsed and its disposition. It was also applied in *Whitney* v. *Dodge, supra,* 105 Cal. 192, 197, in determining the validity of a testamentary trust. The rule in question is not merely a maxim; it is rule of law and a part of the conflict of laws. ■ To constitute law to its contrary there must be some expression of the Legislature indicating that the particular act is so intended. Section 231, Probate Code, contains no such expression. An illustration of what is required appears in *Estate of Lathrop,* 165 Cal. 243 [131 P. 752]. There the court was considering an attempted disposition of personal property situated in California which was valid in the state of the testator's domicile but void in California because in violation of section 1313, Civil Code (limiting charitable bequests). The court recognized the rule governing disposition of personal property, but pointed out that charitable bequests came within the exception to the rule because in California there was *positive* law to the contrary in section 1285, Civil Code, which provided that a will made outside California was invalid if it did not comply with section 1313. The "law to the contrary" set forth in sections 1285 and 1313 clearly appeared. In *Estate*

*of Apple,* 66 Cal. 432 [6 P. 7], the court states that the rule applies "in the absence of *positive* law to the contrary . . ." (P. 434; emphasis added.)

The history of section 946, Civil Code, and section 231, Probate Code, is interesting. The basic escheat law set forth in the latter section was originally a part of the succession act of 1850, and was incorporated in the Civil Code of 1872. Section 946, Civil Code, was first enacted in 1872. It was repealed (apparently inadvertently) by Code Amendments 1873-1874, page 223, and reenacted by Code Amendments 1875-1876, page 78. It is difficult to understand how a general escheat law first adopted long prior to the adoption of the conflict of laws section could be interpreted as "law to the contrary" of the latter. It should be pointed out, also, that section 231 is under the general division of the code headed "Succession." It does not purport to deal with personal property of nonresidents. It has the same applicability or nonapplicability to property of nonresidents as do all the other sections in that division of the code. Neither it nor section 1027, Probate Code, is under the division entitled "Estates of Nonresidents" (div. 3, chap. 16, art. 4).

 Section 1027 provides in part: "If the court, at the time set for the hearing of the final account, or such time thereafter to which the matter may be continued, does not distribute the entire balance of the estate remaining for distribution to known heirs, devisees or legatees entitled to succeed thereto, it must distribute to the State of California that portion of such estate not distributed to such known heirs, devisees or legatees." It is merely procedural, providing for notice of application for distribution and providing for distribution to the state of such portion of the estate as is not distributed to known heirs and that such distribution shall vest title in the state. It further provides procedure for claimants to make claim within five years. It obviously is not "law to the contrary" of section 946, merely providing for distribution to the state in a proper case.

It is suggested that the Montana domiciliary administrator does not fall within the classification mentioned in section 1027, "known heirs, devisees or legatees," and hence is not entitled to distribution. If this argument were followed to its logical conclusion no distribution of an ancillary estate could be made in California to the administrator of a domiciliary estate in another state. Distribution to a domi-

ciliary administrator is not made under section 1027 but under section 1040, Probate Code, which expressly provides therefor.

That portion of the decree of distribution distributing to the State of California the sum of $16,386.81 and any other estate not now known in the State of California or that may hereafter be discovered, other than real property, is reversed, and the probate court is directed to enter a decree distributing the same to the domiciliary administrator.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied September 14, 1955, and respondents' petition for a hearing by the Supreme Court was denied October 13, 1955.