[No. 8,771. In Bank.—February 13, 1885.]

# ESTATE OF ROBERT APPLE, DECEASED. LAURA WELLER ET AL., APPELLANTS, v. R. L. APPLE ET AL., RESPONDENTS.

ESTATE OF DECEDENT—APPEAL—PRESUMPTIONS—JURISDICTION.— On an appeal from a decree of distribution, the jurisdiction of the Probate Court over the subject matter of the controversy will be presumed, when all the parties interested are before the court, and the jurisdiction is assumed by them.

ID.—CONFLICT OF LAWS—DOMICILE—DISTRIBUTION.—In the absence of a statute to the contrary, the distribution of a decedent's personal estate is governed by the law of his actual domicile at the time of his death. But so far as creditors are concerned, each state will deal with the property of a decedent within its jurisdiction according to its own laws. This rule has not been changed in California.

CIVIL CODE—EFFECT AND CONSTRUCTION—COMMON LAW.—The provisions of the Civil Code respecting the subjects to which it relates are controlling, and should be liberally construed ; but where the code is silent, the common law governs.

CONFLICT OF LAWS—DISTRIBUTION OF NON-RESIDENT'S ESTATE.— Personal property in California of a testator, dying in Europe, at the time of his death domiciled in Nevada, should be distributed according to the law of Nevada.

ID.—DEMONSTRATIVE LEGACIES—ABATEMENT.—For purposes of distribution, demonstrative legacies to kindred are not preferred to like legacies to strangers. All stand upon an equality ; and if the fund out of which they are payable be insufficient, all must abate proportionally. It is only in cases where such legacies have to be resorted to for payment of debts, that legacies to kindred are preferred.

APPEAL from an order of the Superior Court of the city and county of San Francisco, distributing an estate.

The facts are sufficiently stated in the opinion of the court.

*G. W. Gordon*, for Appellant, Samuel Owens.

*Chas. L. Weller, Jr.*, for Appellants, Laura and Louisa Weller.

The law of the testator's domicile governs the disposition of his personal estate. (Story's Conflict of Laws, § 383 ; *Parsons* v. *Lyman*, 20 N. Y. 112 ; *Harvey* v. *Richards*, 1 Mason, 381 ; *Wilkins* v. *Ellett*, 9 Wall. 741 ; *Moye* v. *May*, 8 Ired. Eq. 134 ; *Bryan* v. *Moore*, 13 Am. Dec. 349 ; *Yates* v. *Thompson*, 3 Cl. & Finn. 585 ; *Errolin* v. *Wylie*, 10 H. L. Cas. 12.) This rule has not been changed in California. (Civil Code, § 946 ; *Noo-*

*nan* v. *Kemp*, 34 Md. 75 ; *Swearingen* v. *Morris*, 14 Ohio St. 428.)　Section 1361 of the Civil Code, as originally adopted, referred solely to debts of the estate, putting the burden of their payment upon non-consanguineous legatees, and in exoneration of legatees kindred of the testator.　The amendment of 1874 to section 1350 of the Civil Code did not change this construction.

*R. H. Taylor*, for Appellant, The Virginia Chapter, No. 2, R. A. W.

*Taylor & Haight*, for Respondent.

Ross, J.—The deceased, Robert Apple, died in Austria, but was, at the time of his death, a resident of the State of Nevada. By his will, which was executed in Austria, he gave to each of two sons $20,000 in United States bonds, and to certain other persons not related to him certain other sums in like bonds, and for the purpose of erecting a drinking fountain in the city of San Francisco he gave the sum of $10,000.　Each of the legacies, except the last, was a demonstrative one.　The bonds pointed out by the testator, from which the legacies in question were to be paid, were not in the state of California at the time of the testator's death, but they were sent here subsequently, as was the will.　The latter was admitted to probate by the court of probate of the city and county of San Francisco, and administration had upon the estate.　Upon the distribution of the estate the question involved on this appeal arose.　The transcript does not contain the petition for the probate of the will, but it seems from the findings made by the court below, that the deceased had, at the time of his death, some personal property within the state of California.　It further appears from the findings, that after the payment of the debts of the deceased there only remained for distribution United States bonds to the amount of $19,000 ; and the question presented on the appeal is whether all of these bonds should be distributed to the two sons, or whether each of the demonstrative legatees should share proportionately in them.　We assume that the probate court of the city and county of San Francisco had jurisdiction of the subject-matter of the controversy, because all of the parties in in-

terest so assume, and are before the court asking distribution of the bonds in accordance with law. We therefore inquire only what is the law of distribution in view of the facts of the case. As has already been stated, the domicile of the deceased was, at the time of his death, in the State of Nevada. According to the law of that state, no distinction exists in the payment of legacies between the kindred of the testator and persons not so related. If, therefore, the law of the testator's domicile is to control, all of the demonstrative legatees should share proportionately in the bonds left for distribution, and the judgment of the court below must be modified. ·

While each state will deal with the property of a decedent within its jurisdiction, so far as creditors are concerned, according to its pleasure, the universal rule is that, in the absence of positive law to the contrary, distribution of the decedent's personal estate will be governed by the law of his actual domicile at the time of his death. (Redf. Wills, 905; Schouler, Ex'rs & Adm'rs, § 16 ; 2 Greenl. Ev. §§ 668, 671.) Has this rule been changed by any statute of California? We think not. It is claimed that section 4 of the Civil Code has altered it. That section reads : " The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed, with a view to effect its objects and to promote justice."

" The code establishes the law of this state respecting the subjects to which it relates " ; but this, of course, does not mean that there is no law with respect to such subjects except that embodied in the code. When the code speaks, its provisions are controlling, and they are to be liberally construed, with a view to effect its objects and to promote justice—the rule of the common law that statutes in derogation thereof are to be strictly construed having been expressly abolished here; but where the code is silent, the common law governs. Nowhere in either of the codes of California is it provided that personal property, situated here, of a decedent, whose actual domicile at the time of his death was in another state, shall be distributed in accordance with the laws of California. It is obvious that

the necessary effect of such a provision would be to abolish ancillary administrations here altogether, and to make the administration granted on the estate of a non-resident decedent entirely independent of that of the domicile ; yet, by section 1667 of the Code of Civil Procedure, the legislature has clearly recognized such ancillary administrations, by providing as follows : " Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a non-resident of this state, leaving a will which has been duly proved or allowed in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court may order such delivery to be made, and, if necessary, order a sale of the real estate, and a like delivery of the proceeds. * * * "

Whether the court would order such delivery of the property or its proceeds to the foreign administrator, or itself decree distribution, would, as said by Judge Story, in 1818, in the case of *Harvey* v. *Richards*, 1 Mason, 413, be a matter of judicial discretion, depending upon the particular circumstances of the case. But in either case, the result would be the same, for the distribution would be made in accordance with the law of the domicile of the decedent. Nor is it a matter of importance that there was no administration of the estate of the present decedent had in the state of his domicile, but that probate of the will, as well as administration of the estate, was had here, and only here. " I have no objection," said Judge Story, in the case already alluded to, " to the use of the terms ' principal ' and ' auxiliary,' as indicating a distinction in fact as to the objects of the different administrations; but we should guard ourselves against the conclusion that, therefore, there is a distinction in law as to the rights of parties. There is no magic in words. Each of these administrations may be properly considered as a principal one, with reference to the limits of its exclusive authority ; and each might, under circumstances, justly be deemed an auxiliary administration. If the bulk of the property, and all the heirs and legatees and creditors, were

here, and the foreign administration were only to recover a few inconsiderable claims, that would most correctly be denominated a mere auxiliary administration for the beneficial use of the parties here, although the domicile of the testator were abroad. The converse case would, of course, produce an opposite result. But I am yet to learn what possible difference it can make, in the rights of parties before the court, whether the administration be a principal or an auxiliary administration." And for the same reasons it may be added, whether there was but one or more administrations. The question is wholly unaffected by the fact that the will of the decedent was first and only admitted to probate in this state, and that no other administration upon his estate has been had.

The question remains, Under what law shall the personal estate of the decedent be distributed? It must be remembered that we do not have to look to our statutes to find a provision to the effect that the law of the actual domicile of the deceased at the time of his death shall govern, but, on the contrary, we have to look there to see if we find a provision to the effect that that law shall *not* govern in the matter of distribution. "It has," says Chancellor Kent, "become a settled principle of international jurisprudence, and one founded in a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to, and distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happen to be situated." (2 Kent's Com. 429.) Judge Story says: " Be the origin of the doctrine what it may, it has so general a sanction among all civilized nations, that it may be treated as part of the *jus gentium*." "It is a clear proposition," said Lord Loughborough, "not only of the law of England, but every country in the world where law has the least semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no *visible* locality, but that it is subject to that law which governs the person of the owner, both with respect to the transmission of it either by succession or by the act of the party. It follows the law of the person. If he die, it is not the law of the country in which the

property is, but the law of the country of which he was a subject, that will regulate the succession." " And this doctrine has been constantly maintained in England and America with unbroken confidence." (Story, Confl. Laws, § 380.) Finding no statute to the contrary, our conclusion is that the distribution in question must be made in accordance with the law of the State of Nevada. But, even if the law of California should govern in the matter, the same result must follow, if, by the law of California, a demonstrative legacy to kindred is not preferred to a like legacy to strangers upon distribution, where none of the legacies have had to be resorted to for the payment of the debts of the decedent. We proceed, therefore, to examine the statute of this state upon the point, the provisions of which, we regret to say, are somewhat confused and conflicting.

By section 1357 of the Civil Code, legacies are distinguished and designated according to their nature. The second subdivision of that section defines a demonstrative legacy. It reads: " A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid." The statute then goes on in the same subdivision of the same section to prescribe the consequences of a failure, in whole or in part, of such fund or property. It does not provide that where the fund or property is insufficient to pay all of the demonstrative legacies, those to the kindred shall prevail over those to the persons not so related. On the contrary, the consequence declared is: " If such fund or property fail, in whole or in part, resort may be had to the general assets, as in case of a general legacy." (Subdivision 2, § 1357, *supra*.) It is further provided, by section 1362 of the same chapter, as follows: " Abatement takes place in any class only as between legacies of that class, unless a different intention is expressed in the will." Now, all demonstrative legacies are of the same class, regardless of the persons to whom they are made, whether kindred or strangers; for section 1357 in terms declares: " Legacies are distinguished and designated according to their nature, as follows: (1.) A legacy of a particular thing, specified and distinguished from all others of the same kind, belonging to the testator, is specific. If such legacy fails, resort cannot be had to the other property of the testator. (2.) A legacy is demonstrative when the par-

ticular fund or personal property is pointed out from which it is to be taken or paid. If such fund or property fails, in whole or in part, resort may be had to the general assets, as in case of a general legacy. (3.) An annuity is a bequest of certain specified sums periodically. If the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy. (4.) A residuary legacy embraces only that which remains after all the bequests of the will are discharged. (5.) All other legacies are general legacies."

Here, by express statutory provision, specific legacies constitute one class, demonstrative legacies constitute another class, annuities constitute another, residuary legacies constitute another, and general legacies constitute still another class. That all of the legacies in question in the present case belong to the same class, does not admit of doubt; for they are all demonstrative legacies. The property to be distributed consists of the particular bonds pointed out by the testator, from which the legacies made by him were to be paid. But the bonds are insufficient to pay all of the legacies in full, or even those to the kindred. Abatement must therefore necessarily take place. How shall the legacies abate? The statute, as has been seen, declares that abatement takes place in any class only as between legacies of that class, unless a different intention is expressed in the will. The will in this case being silent upon the question of abatement, " abatement," under the statute, " takes place in any class only as between legacies of that class." This language would seem, unmistakably, to put legacies of the same class, in the matter of abatement, upon the same footing. It is true that by section 1361 it is provided that " legacies to husband, widow, or kindred of any class are chargeable only after legacies to persons not related to the testator." But what is here meant by the word " chargeable " ? This section was in the code as originally adopted. It followed then, as it does now, section 1360, which then read as follows : " In the application of the personal property of a decedent to the payment of debts, legacies must be charged in the following order, unless a different intention is expressed in the will : (1) residuary legacies ; (2) general legacies ; (3) legacies given for a valuable consideration, or for the

relinquishment of some right or interest; (4) specific and demonstrative legacies."

For the payment of the *debts* of the decedent, legacies made by him were thus made *chargeable* in the order designated in section 1360; and the legislature followed this with a provision declaring that " legacies to husband, widow or kindred of any class are chargeable only after legacies to persons not related to the testator." It is manifest from these provisions, that as originally adopted, it was for the payment of the debts of the decedent that legacies to husband, widow or kindred were declared to be chargeable only after legacies to persons not related to the testator. Section 1361 has remained as at first adopted, as have also sections 1357 and 1362, hereinbefore referred to. But in 1874, section 1360, as also sections 1358 and 1359 of the same chapter, were amended. Have the amendments of those sections, or either of them, worked a change in the meaning of section 1361, which, as has been said, has remained unchanged since its first adoption ? By section 1358, as originally enacted, the property of a person dying intestate had to be resorted to, for the payment of debts, in a certain named order. But, by the amendment to this section of 1874, when a person dies intestate, all his property, real and personal, without any distinction between them, is chargeable with the payment of his debts, except as otherwise provided in the Civil Code, and the Code of Civil Procedure. Section 1359, as originally enacted, related to the order in which the property of a testator should be resorted to for payment of debts and legacies, and section 1360, as originally enacted, has already been set out at large. By the amendments of 1874, sections 1359 and 1360 were made to read as follows :

" Sec. 1359. The property of a testator, except as otherwise specially provided for in this code and the Code of Civil Procedure, must be resorted to for the payment of debts in the following order: (1) The property which is expressly appropriated by the will for the payment of the debts ; (2) property not disposed of by the will ; (3) property which is devised or bequeathed to a residuary legatee ; (4) property which is not specifically devised or bequeathed ; and (5) all other property ratably. Before any debts are paid, the expenses of the admin-

istration and the allowance to the family must be paid or provided for.

" Sec. 1360.   The property of a testator, except as otherwise specially provided in this code and the Code of Civil Procedure, must be resorted to for the payment of legacies in the following order : (1) The property which is expressly appropriated by the will for the payment of the legacies; (2) property not disposed of by the will; (3) property which is devised or bequeathed to a residuary legatee; (4) property which is specifically devised or bequeathed."

How the amendments of 1874 have operated so as to declare in effect that property pointed out by the testator for the payment of legacies should not be charged with the payment of legacies to strangers until all legacies to kindred are fully satisfied, we are unable to see.   Beyond question, the legislature has not so declared *in terms*.   On the contrary, as we have seen, the statute expressly prescribes the *consequences* of a failure, in whole or in part, of the fund or property from which legacies such as those here in question are to be paid, and those consequences not only do not include a preference to the kindred, but, if we correctly construe the section in regard to abatement, expressly place all legacies of the same class upon the same plane.   This, however, is qualified by section 1362, which clearly, now, as well as before the amendments of 1874, in so far as the payment of *debts* is concerned, makes legacies to husband, widow or kindred of any class chargeable only after legacies to persons not related to the testator.   Of course, in cases where such legacies have to be resorted to for the payment of debts, there would necessarily be a preference given to legacies to husband, widow and kindred over legacies to persons not related to the testator.   In the case at bar, however, it does not appear that resort had to be made to any of the legacies for the payment of the debts of the decedent.   But it is to this extent only that a preference is given to legacies to husband, widow or kindred over legacies to persons not so related to the testator.   Nowhere, expressly or by fair intendment, is any legacy of one class made chargeable with the payment of another legacy of the same class.   Under sections 1357, 1359, 1360, and 1362, all demonstrative legacies stand upon an equality.

Section 1361, however, operates as a qualification to this, by providing in effect, as we understand it, that legacies to husband, widow, or kindred of any class are chargeable *for debts* only after legacies to persons not related to the testator. To this extent, and to this extent only, are legacies to husband, widow, or kindred given a preference over legacies of the same class to strangers. But this preference does not affect the result in the present case, since, as has already been observed, it does not appear here that any of the legacies were resorted to for the payment of debts.

Cause remanded, with directions to the court below to modify the judgment in accordance with the views herein expressed.

SHARPSTEIN, J., MORRISON, C. J., and McKINSTRY, J., concurred.

THORNTON, J., concurring.—I concur in the judgment, on the ground first discussed in the foregoing opinion. The conclusion reached as to that ground, to wit, that the law of the State of Nevada controls, disposes of the case. I think that the second ground considered and passed on in the opinion is not in the case, and therefore it is unnecessary to say anything concerning it.

McKEE, J., concurring.—It is the place of the actual domicile of a person at the time of his death, which determines the distribution of his personal estate ; and as the court below found, as fact, that the domicile of the deceased was at the time of his death in the State of Nevada, the court should have decreed distribution of the personal assets of the estate of the decedent according to the law of that state ; therefore I concur in the judgment.