TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
| --- | --- | --- |
| OPINION | : | |
| | : | No. 22-803 |
| of | : | |
| | : | January 26, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

LYNN BOONE applies to this office for leave to sue DEIDRE DUHART in quo warranto to remove Duhart from her public office as a member of the Compton City Council on the ground that Duhart did not receive the requisite number of votes under the Compton City Charter to be appointed to that office. As a separate matter, Boone alleges that the Compton City Attorney took certain improper and *ultra vires* actions in declaring Duhart's appointment to be valid.

We conclude that there is no substantial question of law regarding Duhart's appointment to the City Council, and that it is therefore not in the public interest to authorize the proposed quo warranto action challenging her appointment. In addition, we conclude that the alleged actions of the Compton City Attorney in this matter do not give rise to an action in quo warranto. Consequently, the application for leave to sue is DENIED.

**INTRODUCTION AND BACKGROUND**

The City of Compton is a charter city that is governed by a five-member city council. In March 2022, former Compton City Councilmember Michelle Chambers resigned from the Council. The appointment to fill this vacancy was placed on the agenda for the regular council meeting held April 5, 2022. At that meeting, the four remaining members considered several motions to appoint a replacement. The votes on

1

the motion to appoint now-Councilmember Duhart were two in favor, one against, and one abstaining. The official minutes from the council meeting describe the motion as having "failed" by this vote count.[1] The Council then considered subsequent motions to appoint other candidates, but none of those motions passed.[2] One week later, however, City Attorney Eric Perrodin announced, and produced a memorandum by his office concluding, that the motion to appoint Duhart had passed. Duhart was then sworn into office. She continues to occupy that office.

The applicant here is an individual named Lynn Boone, who asserts that Duhart's appointment was invalid, and seeks our permission to sue Duhart in quo warranto to remove her from the City Council. Boone and Duhart agree that Compton's City Charter governs the appointment of a Compton City Councilmember.[3] They also recognize that, unless the specific terms of the Charter provide otherwise, the vote count on the motion to appoint Duhart to the Council—two votes in favor, one vote against, and one abstention—would constitute a majority of the four-person quorum that attended the meeting in question, and therefore would suffice to act for the City Council. Put another way, "[i]n the absence of express contrary indication, a simple majority of a collective body constitutes a quorum, and a majority of a quorum is empowered to act for the body."[4] And, as we have previously observed, "the basic parliamentary rule" is that "the direct approval of more than half of those members actually voting for or against the measure becomes the act or choice of the body," such that an abstention acts as an acquiescence "in the action taken by the majority of those who vote affirmatively or negatively."[5] Thus, the abstention in this case would serve as an acquiescence to the two-vote majority of the three members who cast affirmative or negative votes on the motion to appoint Duhart.

---

[1] Compton City Council Meeting Minutes, April 5, 2022, p. 5.

[2] *Id.* at pp. 5-6.

[3] See generally Cal. Const., art. XI, § 5.

[4] 75 Ops.Cal.Atty.Gen. 47, 49 (1992), citing *FTC v. Flotill Products* (1967) 389 U.S. 179, 183; *People v. Harrington* (1883) 63 Cal. 257; 66 Ops.Cal.Atty.Gen. 336 (1983); 62 Ops.Cal.Atty.Gen. 698 (1979); 58 Ops.Cal.Atty.Gen. 706 (1975); 55 Ops.Cal.Atty.Gen. 26 (1972)).

[5] 62 Ops.Cal.Atty.Gen., *supra*, at p. 700, italics omitted; see also *Dry Creek Valley Assn., Inc. v. Board of Supervisors* (1977) 67 Cal.App.3d 839, 843; 94 Ops.Cal.Atty.Gen. 100, 106-108 (2011) (reviewing relevant cases and Attorney General opinions and describing abstention as acquiescence to modified decision-making process through which particular outcome will be determined).

While Boone acknowledges what normal parliamentary rules would provide in the absence of the Charter providing otherwise, she contends that the Charter indeed requires a higher vote threshold under these circumstances, and that the vote count for Duhart did not meet that threshold. Specifically, she asserts that section 607 of the Charter requires at least *three* affirmative votes to appoint a councilmember.[6] Boone argues further that the City Attorney's actions in declaring Duhart's appointment valid were improper and *ultra vires* (that is, beyond his lawful authority). Duhart disputes those arguments. For the reasons that follow, we conclude that Boone's allegations do not warrant granting her application to proceed in quo warranto.

## ANALYSIS

Quo warranto is a civil action that is used to challenge the lawfulness of a public official holding a given public office.[7] A private party who seeks to pursue such an action must first obtain the consent of the Attorney General.[8] In deciding whether to grant consent, the Attorney General has broad and extensive discretion.[9]

When considering a quo warranto application, we do not attempt to resolve the merits of the controversy. Instead, we grant leave to sue if we determine that (1) quo warranto is a proper remedy to resolve the issue presented; (2) the application presents a substantial question of law or fact warranting judicial resolution; and (3) granting the application would serve the public interest.[10] As explained below, Boone's allegations regarding the City Attorney's allegedly improper actions raise an issue as to which quo warranto is not a proper remedy, and her allegations regarding Duhart's allegedly improper appointment do not present any substantial question of law or fact warranting a judicial resolution. Accordingly, we deny Boone's request for leave to sue.

---

[6] Charter section 607 provides in relevant part: "Unless a higher vote is required by other provisions of this Charter the affirmative votes of at least three members of the City Council shall be required for the enactment of any ordinance or resolution, or for the making or approving of any order for the payment of money."

[7] See Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; *People ex rel. Pennington v. City of Richmond* (1956) 141 Cal.App.2d 107, 117.

[8] *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698.

[9] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875, 880-882.

[10] *Id*. at p. 879; 96 Ops.Cal.Atty.Gen. 36, 40 (2013).

## 1. Availability of Quo Warranto

Quo warranto is an appropriate remedy to determine whether a public official is unlawfully holding a public office. Here, Boone principally argues that Duhart is unlawfully holding public office as a Compton City Councilmember on the ground that Duhart received an insufficient number of votes to secure appointment to that office. Thus, quo warranto is an available and appropriate remedy insofar as Boone challenges Duhart's appointment on that basis. Consequently, we will proceed to determine whether this claim also meets our other criteria for granting leave to sue.

As for Boone's related allegations involving the City Attorney's alleged improper and *ultra vires* actions in this matter, we conclude that those allegations do not form the basis of an action in quo warranto as they are collateral to the issue of whether Duhart's appointment was valid. That is, the validity of Duhart's appointment as challenged here depends on how many votes were required for her appointment under the City Charter— not on an evaluation of the City Attorney's alleged actions in announcing his determination with respect to that appointment. Quo warranto is not available to address Boone's allegations concerning the City Attorney's actions, and we therefore put those allegations aside as we consider whether Boone's allegations regarding the Charter's vote-count requirements present a substantial issue of law that would warrant a judicial resolution.[11]

## 2. There Is No Substantial Legal Issue with Respect to the Validity of Duhart's Appointment

To determine whether a substantial legal issue exists as to whether Duhart's appointment required three affirmative votes, we must interpret the City Charter. We interpret a charter using the same rules for interpreting a statute.[12] As the Court of Appeal has explained, "In construing a provision adopted by the voters our task is to ascertain the intent of the voters. We look first to the language of the charter, giving effect to its plain meaning."[13] And we employ the ordinary canons of interpretation, such as the rule that, "Where the words of the charter are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the charter or from its legislative history."[14]

---

[11] See 96 Ops.Cal.Atty.Gen., *supra*, at pp. 46-47, and fn. 55.

[12] *San Diegans for Open Government v. City of San Diego* (2018) 31 Cal.App.5th 349, 375.

[13] *Id*. at p. 376, ellipsis omitted.

[14] *Id*. at p. 376.

Compton's Charter provides that the City Council shall fill a vacancy in any elective office by appointment. In relevant part, section 505 states that "[a] vacancy in any elective office, from whatever cause arising, shall be filled by appointment by the City Council."[15] The provision is silent on the number of votes required, and Boone does not rely on section 505 to support her view that Duhart's appointment was invalid.

Instead, Boone asserts that section 607—which addresses ordinances, resolutions, and orders for payment of money—requires three affirmative votes for the appointment of a councilmember. As mentioned, the relevant part of section 607 states as follows: "Unless a higher vote is required by other provisions of this Charter the affirmative votes of at least three members of the City Council shall be required for the enactment of any ordinance or resolution, or for the making or approving of any order for the payment of money." If indeed section 607 required three affirmative votes for the appointment of a councilmember, the vote count here of two in favor, one against, and one abstaining would not have been sufficient.[16] Thus, we now consider whether a councilmember appointment is an "ordinance," "resolution," or "order for the payment of money" within the meaning of section 607.

We can quickly dispense with the notion that a councilmember's appointment constitutes an "order for the payment of money." While Boone points out that councilmembers receive compensation, the appointment itself cannot reasonably be understood to be an "order for the payment of money," and we doubt that the drafters of the Charter would have used such a roundabout and imprecise way of describing the action of appointing a councilmember if that is what they had meant. Indeed, as discussed further below, several other Charter sections expressly pertain to "appointments," so the omission of that term in section 607 weighs heavily against implying it there. As stated in the analogous context of statutory interpretation, "[w]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded."[17]

This leaves the question whether Duhart's appointment was an "ordinance or resolution" within the meaning of section 607. Boone points to a 1993 Attorney General opinion, also arising out of an application regarding the Compton City Council, in which we concluded that the three questions presented in that application warranted resolution

---

[15] Compton City Charter, art. V, § 505. It is undisputed that the office of a Compton Councilmember is an elective office.

[16] See 94 Ops.Cal.Atty.Gen., *supra*, at pp. 106-110.

[17] *Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 881–882, quoting *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231, 240.

5

by a court in a quo warranto action.[18]  One of those questions was whether a councilmember's vote for himself to be mayor was invalid under the doctrine against self-appointments.[19]  The opinion observed that, if the councilmember's vote proved to be invalid, the vote count would have been two in favor, one against, and one abstaining—the same vote count here.[20]  The opinion briefly asserted that, in that event, whether the member's appointment was an "ordinance or resolution" requiring three affirmative votes would be "but another question of law that merits judicial review and resolution."[21]  But the opinion did not elaborate further on that point and did not examine any other provisions of the Charter with regard to that additional question—presumably because it was not one of the three questions directly presented for consideration.  Now that we are directly confronted with the question, and have examined the Charter comprehensively with a focus on the sole issue at the center of the controversy here, we conclude that no substantial legal issue exists as to whether a councilmember appointment is an "ordinance or resolution."[22]

First, as mentioned above, the Charter's drafters could have expressly referred to appointments in section 607, but they did not.  That weighs against concluding that they meant to include appointments by implication when they instead used the terms "ordinance" and "resolution" in that section.  In addition, although the Charter does not provide an express definition for either "ordinance" or "resolution," we may glean the intended meaning of those terms from the Charter provisions that govern them.[23]

We turn first to the term "ordinance."  The Charter's provisions governing ordinances make apparent that they apply to local legislation:

- section 608 mandates the use of an enactment clause for an ordinance ("The City Council of the City of Compton does ordain as follows");

---

[18] 76 Ops.Cal.Atty.Gen. 254 (1993).

[19] *Id*. at pp. 256-259.

[20] *Id.* at p. 257.

[21] *Ibid*.

[22] Duhart directs our attention to a court order dismissing the ensuing quo warranto lawsuit; however, the order of dismissal does disclose the basis of the court's ruling, nor whether the court even reached the issue now directly before us.  We therefore give no weight to the court's order of dismissal in that earlier case.

[23] See *San Diegans for Open Government v. City of San Diego*, *supra*, 31 Cal.App.5th at p. 376 (stating that provisions susceptible to more than one reasonable interpretation should be considered in light of "overall statutory scheme").

6

- section 609 directs the City Clerk to publish adopted ordinances or summaries of them;

- section 610 authorizes the codification of enacted and published ordinances;

- section 611 provides that ordinances are effective 30 days after enactment (except those relating to specified matters, such as elections);

- section 612 sets forth the punishments for violation of an ordinance;

- section 613 requires the Council to amend an ordinance by its reenactment with amendments; and

- section 700(b) requires the City Clerk to number all ordinances and to maintain them in a book.

These provisions make clear that the term "ordinance" in the Charter refers to local legislation of general application—as opposed to a specific and discrete action taken by the legislative body, such as an appointment. That understanding is consistent with Compton's municipal code and court opinions, which describe ordinances in a like manner.[24] For these reasons, a particular council action to make an appointment cannot plausibly be viewed as an "ordinance" under the Charter. Thus, we discern no substantial issue as to whether an appointment is an ordinance requiring three affirmative votes under Charter section 607.

The Charter's text supports a similar conclusion with regard to the term "resolution." The Charter requires the City Clerk to number resolutions and maintain them in a book (like ordinances).[25] It also requires the title of a resolution to be read

---

[24] See, e.g., Compton Mun. Code, § 1-3 (stating that ordinance "[s]hall mean any act of local legislation . . . so long as it is adopted by the procedure required for the adoption of an ordinance and so long as it remains in force and effect pursuant to the law," and that ordinance "refers to an ordinance of the City of Compton"); *San Diego City Firefighters, Local 145 v. Bd. of Admin. of San Diego City Employees. Ret. Sys.*, 206 Cal.App.4th 594, 607 (2012) ("ordinance is a local law which is adopted with all the legal formality of a statute"); *Porter v. City of Riverside* (1968) 261 Cal.App.2d 832, 836 ("An ordinance stands in the same relationship to a city charter as does a statute to the constitution of the state").

[25] Compton City Charter, art. VII, § 700(b) (requiring recording and numbering in books of ordinances and resolutions).

22-803

aloud and the remainder of the resolution to be read aloud upon request. [26] Nowhere does the Charter refer to the action taken for an appointment as a "resolution."[27] On the other hand, there is a Charter provision, governing appointments to the City's Planning Commission, Personnel Board, and Recreation and Parks Commission, that expressly refers to the act of proposing the appointment as a "motion," providing further evidence that the Charter does not envision appointments to be "resolutions."[28] Tellingly, this same provision specifies a four-affirmative-vote requirement for those appointments, illustrating once again that when the Charter's drafters intended to address the subject of appointments—and, in that instance, to require a higher vote threshold for certain types of appointments—they knew how to do so.

Boone asserts that the higher vote count required in this provision and in others indicates an intent for a higher vote count on councilmember appointments as well.[29] In our view, however, it is unlikely that these provisions, which are not directly related to councilmember appointments, evince any intent as to such appointments. If anything, their applicability to positions other than councilmember supports the conclusion that the specified higher vote thresholds do *not* apply in the context of councilmember appointments.[30]

And when we consider the particular appointment at issue here, the motions to appoint at the meeting in question were not identified on the meeting agenda or elsewhere

[26] *Id*., art. VI, § 607 ("At the time of adoption of a resolution it need be read in full only if, after reading of title thereof, the further reading thereof is requested").

[27] Cf. *Cozzolino v. City of Fontana* (1955) 136 Cal.App.2d 608, 610-612 (indicating that, in absence of statutory requirement otherwise, motion rather than resolution is sufficient to appoint and remove officer).

[28] See Compton City Charter, art. X, § 1002.

[29] Boone cites to provisions that require at least four affirmative votes. (See, e.g., *id*., art. VI, § 607 (emergency ordinances introduced and adopted at same meeting), art. XIV, §§ 1408 (specified budget changes) & 1409 (relating to forgoing bid process for public works exceeding twenty-five thousand dollars, if either city employees themselves will perform work, or urgent work is needed to preserve life, health, or property).)

[30] See footnote 17, *ante*. Nor does it strike us as particularly surprising that the Charter requires a greater number of affirmative votes in these contexts than it does in the context of councilmember appointments. As a practical matter, when there are one or more Council vacancies to fill, there will be fewer councilmembers available to vote on the appointment, making it all the more difficult to satisfy a supermajority requirement. In any event, the Charter specifies the types of appointments that require a higher number of affirmative votes, and councilmember appointments are not among them.

8

as resolutions, and were not titled or numbered as such in the meeting minutes.[31] The agenda item for the appointment was simply listed as "CITY COUNCIL, DISTRICT 1 APPOINTMENT (DISCUSSION/ACTION)."[32] In contrast, the agenda for the same meeting contained multiple agenda items for resolutions, each of which were expressly identified on the agenda as "A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF COMPTON . . . ."[33] For each agenda item regarding a resolution, the agenda packet contained draft written Resolutions.[34] The meeting minutes identified each resolution with a title and a number.[35] Yet Boone makes no attempt to argue that Duhart's appointment, which Boone views as a "resolution," was improper for failing to conform to the requirements for resolutions.[36]

Instead, Boone argues that Duhart's appointment meets a definition of "resolution" that lies outside of the Charter, in Black's Law Dictionary. In full, that definition states:

> resolution (17c) 1. Parliamentary law. A main motion that formally expresses the sense, will, or action of a deliberative assembly (esp. a legislative body). • A resolution is a highly formal kind of main motion, often containing a preamble, and one or more resolving clauses in the form, "Resolved, That . . . ."[37]

Boone argues that the Charter intends for "resolution" to have this broad meaning and that it encompasses an appointment. But no provision of the Charter uses the term "resolution" to describe the means for making an appointment. Instead, where the Charter does describe the means of appointment (in an article addressing council-appointed boards and commissions), it states that "members of . . . such boards or commissions shall be appointed, and shall be subject to removal, by *motion* of the City Council" adopted by the requisite number of votes.[38] While a dictionary may provide

---

[31] Compton City Council Meeting Minutes, April 5, 2022.

[32] Compton City Council Meeting Agenda, April 5, 2022, p. 3.

[33] *Id*. at pp. 3-4.

[34] See, *id*. at pp. 18, 24, 38, 74, 121, 132.

[35] See, e.g., Compton City Council Meeting Minutes, April 5, 2022, pp. 4, 6-7.

[36] See *City of Pasadena v. Paine* (1954) 126 Cal.App.2d 93, 96 (explaining that city council's disregard of its parliamentary rule on resolution procedure will not invalidate action taken, but that council cannot disregard mandatory rules in its charter).

[37] Black's Law Dict., 11th ed. 2019, ellipsis in original, italics omitted.

[38] See Compton City Charter, art. X, § 1002, italics added.

insight into the meaning of an otherwise undefined term, an examination of the Charter as a whole illustrates that it is implausible that the Charter intended "resolution," and its concomitant requirements, to encompass a motion to appoint a councilmember.[39]

Lastly, Boone argues that the Charter does not state anywhere that a council action of any sort may be taken by fewer than three affirmative votes. She notes that the Charter sometimes requires at least four affirmative votes, and reasons that it would be anomalous for the Charter not to require at least three affirmative votes here as well.[40] We decline to interpret silence on the number of votes for the appointment at issue here as imposing a specific vote requirement.[41] If the Charter had intended a specific vote requirement to apply to councilmember appointments, we think it would have expressly stated as much, like it does elsewhere for other types of appointments. Instead, given the Charter's silence on the number of votes required for councilmember appointments, the most reasonable interpretation is that such appointments are governed by the general parliamentary rule that a majority of a quorum suffices for the council to take action.[42]

In sum, we do not find the vote count issue raised in the application to be a substantial one that warrants judicial resolution. Even where (unlike here) an issue presented for our consideration is debatable, the Attorney General has "considerable discretion" in determining whether a particular claim is sufficiently substantial to warrant the initiation of a quo warranto lawsuit and the resulting expenditure of judicial resources.[43] And as the Court of Appeal has explained, an arguable interpretation of a city charter provision does not automatically elevate a claim into a substantial question of law or fact for purposes of determining the appropriateness of quo warranto.[44] Here,

---

[39] See *Stennett v. Miller* (2019) 34 Cal.App.5th 284, 293, fn. 4 (cautioning against selective court reliance on dictionary definitions to determine statutory intent and explaining that meaning must be discerned with reference to purpose inferred from context).

[40] See, e.g., Compton City Charter, art. X, § 1002 & footnote 29, *ante*.

[41] See footnote 6, *ante*; see also *Siminoff v. Jas. H. Goodman & Co. Bank* (1912) 18 Cal.App. 5, 11, quoting *Estate of Apple* (1885) 66 Cal. 432, 434 ("Where the Code is silent, the common law governs"); Gov. Code, § 36512 (general law provision is likewise silent on number of votes for councilmember appointment).

[42] See footnote 4 and accompanying text, and footnotes 6 and 30, *ante*.

[43] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 875; *see id.* at p. 882 ("[T]he Attorney General retains discretion whether to grant leave to sue in quo warranto where an issue is fair or debatable").

[44] *Id.*, at pp. 875, 880-882; 96 Ops.Cal.Atty.Gen. 48, 49 (2013); see also *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650 ("We do not believe . . . that the debatable issue

while Boone has ably articulated her views and arguments, we conclude that the Charter cannot reasonably be read as requiring three affirmative votes to appoint a councilmember. Accordingly, we find there is no substantial legal issue as to the validity of Duhart's appointment that would warrant a judicial resolution.

**3. It Is Not in the Public Interest To Authorize the Proposed Quo Warranto Action**

Given our conclusions that (1) there is no substantial issue of law or fact concerning Duhart's appointment to the Compton City Council, and (2) the allegations concerning the City Attorney's actions in this matter do not form the basis of a quo warranto action, it follows that it would not serve the public interest to authorize the proposed action.

Accordingly, for the reasons set forth above, the application for leave to sue in quo warranto is DENIED.

---

inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. . . . The crystallization of an issue thus does not preclude an exercise of his discretion; it causes it. . . . [¶¶] The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails").